Michael REYNOLDS, Petitioner–
Appellant,

v.

Steve BERRY, Warden, Respondent–
Appellee.

No. 96–6496.

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1998.

Decided June 4, 1998.

Joseph Ray Myers (argued and briefed), Kentucky Resource Center, Department of Public Advocacy, Frankfort, KY, for Petitioner–Appellant.

David A. Sexton, Assistant Attorney General (argued), Todd D. Ferguson (briefed), Office of the Attorney General, Civil Division, Frankfort, KY, for Respondent–Appellee.

Before: RYAN, DAUGHTREY, and LAY,* Circuit Judges.

## OPINION

LAY, Circuit Judge.

In 1979, the State of Kentucky convicted Michael Reynolds of first-degree manslaughter and sentenced him to twenty years in prison. The Kentucky Supreme Court affirmed Reynolds' conviction. *See Reynolds v. Commonwealth,* 596 S.W.2d 372 (Ky. 1979). On August 18, 1980, Reynolds moved to compel the trial court to provide the factual contents of his presentence investigation

---

* The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

report as required by Kentucky Revised Statutes § 532.050. Thereafter, the State and Reynolds' legal advisor met and corrected several errors of the pretrial sentence report. The trial court's failure to comply with § 532.050 made it mandatory for the court to resentence Reynolds and enter a new judgment. The court resentenced Reynolds to twenty years imprisonment.

Subsequently, on November 14, 1980, Reynolds filed a motion to vacate his sentence and judgment pursuant to Kentucky Rule of Criminal Procedure 11.42 ("Rule 11.42"),[1] alleging the State violated his constitutional rights during his original trial.[2] In December 1980, the state trial court denied Reynolds' motion without holding an evidentiary hearing, concluding he had already filed and been granted an earlier motion to vacate his sentence, and he had already filed a direct appeal on his conviction, which the Kentucky Supreme Court fully reviewed and upheld. *See* J.A. at 69 (reprinting state trial court's order denying Reynolds' November 14, 1980 motion to vacate his sentence). Reynolds appealed. The Kentucky Court of Appeals affirmed, *see Reynolds v. Commonwealth*, No. 81–CA–553–MR (Ky.Ct.App. Sept. 25, 1981), and the Kentucky Supreme Court denied review. *See Reynolds v. Commonwealth*, No. 81–SC–745–D (Ky. Dec. 8, 1981).

More than ten years later, Reynolds filed another motion to vacate his sentence and judgment pursuant to Rule 11.42. On November 8, 1991, the trial court denied the motion, stating Reynolds' trial attorney was unavailable to answer or respond to the numerous trial related issues Reynolds framed, and the passage of time from the date of trial to the date of the motion was such as to bar meaningful review of the issues. *See* J.A. at 107–108 (reprinting state trial court's order denying Reynolds' 1991 Rule 11.42 motion to vacate judgment). Reynolds appealed, and the court of appeals affirmed the trial court's decision. *See Reynolds v. Commonwealth*, No. 91–CA–2722–MR (Ky.Ct.App. July 3, 1992). This time, however, the Kentucky Supreme Court reversed the court of appeals. On January 14, 1993, the supreme court reversed and *remanded the case for an evidentiary hearing on Reynolds' Rule 11.42 motion*. *See Reynolds v. Commonwealth*, No. 92–SC–591–D (Ky. Jan. 14, 1993).

In the meantime, on April 8, 1993, Reynolds filed a supplemental Rule 11.42 motion, which the State considered to be a third Rule 11.42 motion. The trial court denied this third motion as successive. Reynolds appealed the denial of his motion and the denial of an evidentiary hearing on his motion to the Kentucky Court of Appeals. The court of appeals affirmed. *See Reynolds v. Commonwealth*, No. 93–CA–1464–MR (Ky.Ct.App. Dec. 23, 1994).[3] Reynolds appealed to the

**1.** Rule 11.42 states in relevant part:
(1) A prisoner in custody under sentence or a defendant on probation, parole or conditional discharge who claims a right to be released on the ground that the sentence is subject to collateral attack may at any time proceed directly by motion in the court that imposed the sentence to vacate, set aside or correct it.
(2) The motion shall be signed and verified by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. Failure to comply with this section shall warrant a summary dismissal of the motion.
(3) The motion shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding.

**2.** Reynolds claimed (1) he had been denied effective assistance of counsel, in violation of the Sixth Amendment, (2) he had been denied due process, in violation of the Fifth Amendment as applied to the states through the Fourteenth Amendment, (3) he had been denied his Sixth Amendment right of confrontation, and (4) he had been denied his right to a fair and impartial jury trial under the Equal Protection Clause of the Fourteenth Amendment. *See* J.A. at 60–61.

**3.** Curiously, the court of appeals' opinion, although affirming the trial court's denial of relief under Rule 11.42, then added:

We agree that Reynolds has filed successive RCr 11.42 motions and, therefore, is precluded from seeking relief under the rule. Based on the face of the record, the trial court did not err in denying him an evidentiary hearing. *Hopewell v. Commonwealth*, 687 S.W.2d 153 (Ky.App. 1985). However, it is also clear to this Court that Reynolds has never had the merits of his claims considered. Procedural rules should not prevent claimants from having the merits of their claims considered. Reynolds may have properly brought this ac-

Kentucky Supreme Court, seeking discretionary review as well as an order directing the trial court to comply with the Kentucky Supreme Court's January 14, 1993 order, which had directed the trial court to conduct an evidentiary hearing on Reynolds' second Rule 11.42 motion. On May 10, 1995, the Kentucky Supreme Court denied Reynolds' requests. *See Reynolds v. Commonwealth,* No. 95–SC–45–D (Ky. May 10, 1995).

On October 24, 1994, Reynolds filed a *pro se* petition for a writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254. The district court referred the matter to a federal magistrate judge who recommended dismissal of Reynolds' petition on the ground that Reynolds had not yet exhausted his state remedies. The district court dismissed Reynolds' petition, concluding the Kentucky Supreme Court should have an opportunity to respond to Reynolds' request for enforcement of the Kentucky Supreme Court's January 14, 1993 ruling before a federal court reviewed Reynolds' claim in a habeas corpus proceeding. *See Reynolds v. Berry,* No. 94–404 (E.D.Ky. Apr. 7, 1995). Reynolds appealed to this court. In August 1995, the Sixth Circuit concluded Reynolds had effectively exhausted his state remedies, dismissed his appeal, and remanded his case to the district court for further proceedings. *See Reynolds v. Berry,* No. 95–5625 (6th Cir. Aug. 15, 1995).

Following remand, the district court recommitted the matter to the federal magistrate judge. The magistrate judge concluded Reynolds was entitled to habeas relief to the extent that the state trial court should be directed to consider the merits of the claims Reynolds raised in his initial Rule 11.42 motion filed on November 14, 1980. The district court disagreed with the magistrate judge. The district court concluded that the question of whether Reynolds' motions should be considered successive motions under Rule 11.42 was a question of state law that had been addressed by the Kentucky courts on more than one occasion. *See*

*Reynolds v. Commonwealth,* No. 94–404 (E.D.Ky. Sept. 30, 1996). The district court denied Reynolds' habeas petition. *Id.* Reynolds now appeals.

The State claims Reynolds' 1980 motion for resentencing pursuant to Kentucky Revised Statutes § 532.050 was the equivalent of a post-conviction collateral attack under Rule 11.42. The State claims Reynolds did not raise any constitutional claims until his second and third Rule 11.42 motions, and Kentucky law does not allow successive post-conviction motions. *See* Ky. R.Crim. P. 11.42; *Hampton v. Commonwealth,* 454 S.W.2d 672, 673 (Ky.1970). Thus, the State argues, Reynolds procedurally defaulted his constitutional claims by failing to raise those claims in his first Rule 11.42 motion.

In *Maupin v. Smith,* 785 F.2d 135 (6th Cir.1986), this court set forth the analysis for determining whether a procedural default has occurred and, if so, what effect the default has on a federal court's review of a prisoner's habeas petition. First, the court must find there is a state procedural rule that applies to the petitioner's claim, and the petitioner failed to comply with the rule. *Maupin,* 785 F.2d at 138. Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id.* (citing *County Court of Ulster County v. Allen,* 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)). Third, the court must decide whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of the petitioner's federal constitutional claim. *Id.* (citing *Allen,* 442 U.S. at 148, 99 S.Ct. 2213; *Wainwright v. Sykes,* 433 U.S. 72, 78, 81, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). This third question typically focuses on the adequacy of the state ground. The adequacy of the state ground is determined by examining the state's legitimate interests in the procedural rule in light of the federal interest in considering federal claims. *See id.* (citing *Henry v. Mississippi,*

tion under Civil Rule of Procedure 60.02 in order that his claims be finally reviewed on the merits.

For the foregoing reasons, the order of the Mercer Circuit Court is affirmed.

*Reynolds,* No. 93–CA–1464–MR. For a discussion of the relationship between Rule 60.02 and Rule 11.42, see this court's opinion in *Wesselman v. Seabold,* 834 F.2d 99 (6th Cir.1987).

379 U.S. 443, 446–48, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965)). Finally, once a court determines the petitioner did not comply with a state procedural rule, and the rule is an adequate and independent state ground, then the petitioner must demonstrate cause for not following the procedural rule and prejudice resulting from the alleged constitutional error. *Id.*

There is no question that Kentucky law prohibits prisoners from bringing successive motions under Rule 11.42. *See, e.g., Commonwealth v. Ivey,* 599 S.W.2d 456, 457–58 (Ky.1980). Moreover, as this court stated in *Wesselman,* "Kentucky's interests in finality of judgments, judicial economy, and permitting defendants just 'one bite of the apple' are both obvious and substantial." 834 F.2d at 101. As such, we have no quarrel with

Kentucky's prohibition against successive post-conviction petitions under Rule 11.42. However, that is not the issue here.

■ Reynolds' initial post-conviction motion was a motion to correct his presentence report pursuant to § 532.050. The state courts have treated his motion as the equivalent of a Rule 11.42 motion[4] in which collateral attack of his conviction could have been made. In all due deference to the state courts' application and interpretation of Rule 11.42, we cannot agree that the fact that Reynolds did not raise his constitutional claims in his § 532.050 motion constituted sufficient procedural default so as to bar his federal petition for a writ of habeas corpus.

Section 532.050 states:

4. We recognize that Reynolds labeled his § 532.050 motion as one for resentencing. Yet, the hearing on his motion points up that he was simply trying to correct the presentence report to avoid any consequential impact on his future. The following is an excerpt of the colloquy between the court and Reynolds' legal advisor (a prisoner who worked with the Public Defender's Office):

> Mr. Clarke: I think Mr. Reynolds wants to make sure that the record as it comes out of this court is correct and this Presentence Report is a part of that record and he has found numerous errors—which, if the rating system that we use is of any value, the rating system considers these things as important, and if those remain erroneous then it will have an impact on his future.
>
> \* \* \* \* \* \*
>
> Mr. Clarke: I understand, Your Honor, and we are not attacking his conviction today—that is not accessible to us at this point—that has already been to the Court of Appeals and back. The Court: I want to correct anything Mr. Reynolds thinks is erroneous because, obviously, it is ridiculous to have a record that is not correct.
>
> \* \* \* \* \* \*
>
> Defendant: That's all I want.
>
> \* \* \* \* \* \*
>
> The Court: Now, in Indictment 78–CR–38 you are charged with the crime of murder, subsequently convicted of first degree manslaughter in that case and I have consulted with the Department of Corrections previously, as you know, and again I have read the corrections which have been made by mutual agreement in the report, and I want to say to you also that I regret that there have been errors in that. I won't tell you that I don't make any myself—I have erasers on all my pencils too, and I'm

> sure you do too—but those have been considered. I would like to ask you in person, if I may, if you have now seen, reviewed, understand, read, otherwise digested this report as much as you would care to and as much as you feel that you need to in order that an intelligent sentencing may be had at this time?
> Defendant: Yes, sir.
> The Court: Mr. Clarke, do you wish to see it any further?
> Mr. Clarke: No, Your Honor, I think he achieved what he wanted in terms of a revision.
> The Court: Do you both feel that you do understand the report as it is now written?
> Defendant: Yes, sir.
> Mr. Clarke: I believe that some of the errors were as a result of him not fully understanding the questions being asked. For instance, on the employment situation—it was really based on what he said, but I think we clarified those questions.
> The Court: In other words, if mistakes have been made, we have now corrected them to the satisfaction of everybody?
> Mr. Clarke: Yes, Your Honor.
>
> \* \* \* \* \* \*
>
> The Court: All right, I will give you an opportunity to make any statements you would like to make in behalf of the defendant, or anything you would like to say in mitigation of punishment at this time?
> Mr. Clarke: I don't have anything further, Your Honor.
> The Court: I will ask you, sir, if you have any statement you want to make in your own behalf, any information that you would like to present in mitigation of punishment—in other words, anything you want to say for yourself?
> Defendant: Not at this time.

No court *shall* impose sentence for conviction of a felony, other than a capital offense, without first ordering a presentence investigation and giving due consideration to a written report of the investigation.... Before imposing sentence, the court *shall* advise the defendant or his counsel of the factual contents and conclusions of any presentence investigation ... and afford a fair opportunity and a reasonable period of time, if the defendant so requests, to controvert them.

Ky.Rev.Stat. Ann. § 532.050 (emphasis added). In discussing the requirements of § 532.050, the Kentucky Supreme Court has observed:

The ordering of a presentencing investigation and consideration of the written report of such investigation is made *mandatory* by the statute. The court is also mandatorily required to advise defendant or his counsel of the factual contents and conclusions of the investigation and to afford him an opportunity to controvert them should they be adverse to the interest of the defendant.... The requirement placed upon a trial court by the statute is mandatory and does not afford a trial judge the privilege or discretion of determining whether the report will be requested, obtained, or considered. It is a "must" and is in fact a *prerequisite to the entry of a valid judgment.*

*Brewer v. Commonwealth,* 550 S.W.2d 474, 476 (Ky.1977) (emphasis added).

Kentucky law thus makes it clear that compliance with § 532.050 was essential before the trial court could enter a valid judgment on a conviction. As such, Reynolds' § 532.050 motion was directly related to the validity of his original sentence. The trial court granted an evidentiary hearing to Reynolds on his motion under § 532.050, *ordered* the presentence report *corrected,* and

was required to vacate the original judgment and sentence as invalid. Thus, it is apparent that Reynolds' initial Rule 11.42 motion, filed on November 14, 1980, collaterally attacked the new judgment and sentence and not the original, invalid judgment rendered in 1979.

The United States Supreme Court has made clear that a state procedural bar must have been "firmly established and regularly followed" in order to qualify as an independent ground for decision. *See Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). It cannot be said that Reynolds or his counsel were ever placed on notice that if his initial motion under § 532.050 was successful, it could be a procedural bar to Rule 11.42 motions attacking the newly rendered sentence and judgment. The State did not .inform him of that; no Kentucky case had so construed § 532.050 in that manner (which makes sense because the sentencing court's compliance with the statute was a prerequisite to the entry of a valid judgment of conviction).[5]

Furthermore, we deem it significant that Reynolds' counsel did not believe he could attack his conviction at that time under § 532.050. This was a reasonable assumption for him to make, especially if counsel considered the original judgment to be invalid. In addition, we think it clear that a § 532.050 motion for resentencing must be considered by its substance and not its label. Reynolds' sole purpose in filing his original motion was to correct the presentence report. Because of the Kentucky courts' subsequent treatment of Reynolds' § 532.050 motion, Reynolds has never been given an opportunity to raise his constitutional claims in state court.

It is readily apparent that Reynolds' § 532.050 motion invalidated the original judgment, and no Kentucky rule was firmly established nor regularly followed[6] which

---

5. The State argues that *McBride v. Commonwealth,* 432 S.W.2d 410 (Ky.App. 1968), is similar to the present case. In *McBride,* a prisoner's post-conviction motion for a concurrent sentence was treated as equivalent to a Rule 11.42 motion. *McBride,* 432 S.W.2d at 410–411. However, this case was decided seven years before the passage of § 532.050 and such a motion did not carry with it the exact terms of the statute. Furthermore, in *McBride,* a final valid judgment had

been entered when petitioner filed his motion to change his sentence. The trial judge in *McBride* was not under a statutory mandate to correct an invalid sentence.

6. At one time, the Kentucky Supreme Court remanded Reynolds' petition for an evidentiary hearing without regard to his filing his prior motion under § 532.050. *See Reynolds,* No. 92–SC–591–D.

procedurally barred further collateral attack on the newly entered judgment. Therefore, we hold the alleged state procedural bar cannot be binding on the federal courts under the circumstances existing in this case. *See Ford,* 498 U.S. at 421–25, 111 S.Ct. 850; *Maupin,* 785 F.2d at 138.

The case is remanded to the district court for consideration of petitioner's constitutional claims. In remanding to the district court, we do not in any way review or pass on the substance of Reynolds' claims.

IT IS SO ORDERED.